IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, *et al.*, | ) ) ) ) 06 C 3738 ) |
| Plaintiffs, | ) Magistrate Judge Jeffrey Cole ) |
| vs. | ) ) |
| THREE WAY HANGING, INC., and THREE WAY DRYWALL, INC., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, Chicago Regional Council Of Carpenters Welfare Fund, *et. al*, move for dismissal of the counterclaim of defendant, Three Way Hanging, Inc., for lack of jurisdiction.

The plaintiffs filed a complaint against the defendants under Section 301 of the Labor Taft-Hartley Act (also known as the Labor Management Relations Act ("LMRA")) and Section 502 of the Employee Retirement Income Security Act ("ERISA") on July 11, 2006. The plaintiffs charged that Three Way Drywall, Inc. ("Drywall") is an alter ego of Three Way Hanging, Inc. ("Hanging"), and has improperly refused to allow an audit under the terms of the applicable collective bargaining and trust agreements. On August 13, 2007, Hanging sought leave to file a permissive counterclaim, which I granted on August 15, 2007.

The counterclaim relates that Hanging is a signatory to a collective bargaining agreement with not only the plaintiffs, but with the Chicago Northeast Illinois District Council of Carpenters for Will County as well. As such, it must pay employee benefits to workers from both unions. During a routine audit by the Will County union, it was discovered that Hanging had made payments

to plaintiffs that actually ought to have been made to the Will County union. Hanging cut a check for the amount – $27,926.24 – to the Will County union, and contacted the plaintiffs regarding the overpayment. On December 18, 2006, Hanging made a formal demand on the plaintiffs for a return of the overpayment, but the plaintiffs refused. The counterclaim alleges a state law cause of action against the plaintiffs for unjust enrichment. The plaintiffs argue that the counterclaim must be dismissed because the court has no jurisdiction over it.

There is no dispute that the counterclaim is permissive rather than compulsory – Hanging concedes as much in its pleading. (*Counterclaim*, ¶ 4). Under Fed.R.Civ.P. 13(b), "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." As a permissive counterclaim, however, it is outside the court's supplemental jurisdiction, as 28 U.S.C. § 1367(a) covers only "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Therefore, it requires an independent basis of federal jurisdiction. *Oak Park Trust and Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 *Federal Practice and Procedure* § 1422 (2d ed. 1990). Because the parties are not of diverse citizenship, jurisdiction depends on the claim arising under federal law. *Therkildsen*, 209 F.3d at 651. And the burden of establishing jurisdiction falls on Hanging. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005)("Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction.").

Hanging submits that in this instance, jurisdiction derives from the same statutes conferring

jurisdiction on plaintiffs' complaint: the ERISA and the Taft-Hartley Act. This is an odd argument indeed; if that were the case, why bring a state law claim? Hanging's explanation goes like this: it has a state common law unjust enrichment claim, but it is preempted by the ERISA and the Taft-Hartley Act, so this court has jurisdiction over it. The plaintiffs argue that because the merits of Hanging's counterclaim do not turn on an interpretation of the collective bargaining agreement, that is not the case. But even if it were, plaintiffs maintain that a preempted unjust enrichment claim must be dismissed. Both sides struggle a bit, neither side is entirely convincing and, as it happens, neither side is correct.

The issue behind Hanging's preemption/jurisdiction argument is whether the "broad preemptive sweep" of Section 301 of the Taft-Hartley Act reaches Hanging's state law unjust enrichment claim. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court explained the line that must be drawn between bona fide state law claims that should not be preempted and those that fall within the statute:

> If the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

*Id.* at 405-06 (citing *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co.*, 369 U.S. 95 (1962)). The policy is designed to reduce the possibility "that individual contract terms might have different meanings under state and federal law." *Lucas Flour*, 369 U.S. at 103. Conflicting interpretations of contract terms "would inevitably exert a disruptive

3

influence" on the collective bargaining process. *Id.*[1]

According to Hanging, the resolution of its unjust enrichment claim "will require an examination of the terms, conditions and issues of the collective bargaining agreement" between it and the plaintiffs. More specifically, it argues that "questions of membership and the terms and conditions of the . . . collective bargaining agreement . . . will be necessary to resolve [its] allegations of overpayment of union dues . . . ." (*Hanging's Response to Plaintiffs' Motion to Dismiss*, at 2). Plaintiffs argue that, at most, resolution of Hanging's claim will depend on factual issues regarding where the men worked – Will County or Chicago – and the amount of the payments sent to each union. Beyond these unadorned assertions, however, the parties provide very little to inform this determination.

Hanging relies on *Robins v. Lynch*, 836 F.2d 330 (7th Cir. 1988), calling it "an important ruling relative to this Court's determination of Plaintiff's Motion to Dismiss . . . ." (*Hanging's Response to Plaintiffs' Motion*, at 4). But it goes no further in its argument than that. Yet *Robins* dealt with a *compulsory* counterclaim under Fed.R.Civ.P. 13(a), not a permissive counterclaim, which is what Hanging concededly advances here.

Plaintiffs fare little better by relying on *Brazinski v. Amoco Petroleume Additives Co.*, 6 F.3d 1176 (7th Cir. 1993). There, employees' tort claims for invasion of privacy and infliction of emotional distress over video surveillance at their workplace were found to be "arguably within the scope" of their collective bargaining agreement. The employees' claims were found preempted

---

[1] Like the Taft-Hartley Act, the ERISA is also a provision with "extraordinary preemptive power." *Aetna Health v. Davila*, 542 U.S. 200, 209 (2004). So although the parties confine their discussions to Section 301 preemption, the same concepts are at work under ERISA as its preemptive force mirrors that of the LMRA. *Id.*

4

because the employer advanced a "non-frivolous argument" that the surveillance was "authorized, albeit implicitly by the management rights clause of the" collective bargaining agreement. *Id.* at 1181. But nevertheless, the court had jurisdiction over the preempted claim, which it characterized as a Section 301 suit. *Id.* at 1179. The case helps the plaintiffs only if Hanging is unable to negotiate the unimposing hurdle of coming up with a "non-frivolous argument."

Hanging clears it, but not by a wide margin. The applicable cases differentiate between the mere need to look to the collective bargaining agreement and the need for interpreting its terms. *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994); *Lingle*, 486 U.S. at 413 n.12. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." 512 U.S. at 124. Purely factual questions about an employee's conduct or an employer's conduct do not "requir[e] a court to interpret any term of a collective-bargaining agreement." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261-262 (1994)(citations omitted). As such, there is something attractive in plaintiffs' position that this is a simple matter of determining where the men worked and when, and whether the correct payments were sent to the correct union.

Nevertheless, it would seem that the coverage of workers is the issue, and that determination would require more than a mere "look to" the collective bargaining agreement. The agreement would have to be interpreted in order to resolve whether the roster of workers for which Hanging contends it mistakenly paid did, indeed, fall under the auspices of the parties' agreement. *Laborers' Pension Fund v. A & C Environmental, Inc.*, 301 F.3d 768, 782 (7th Cir. 2002)(determination of whether work was covered required interpretation of collective bargaining agreement); *Chicago Dist.*

5

*Council of Carpenters Pension Fund v. Door Systems, Inc.*, 1999 WL 754696, *5 (N.D.Ill. Sept. 10, 1999)(determination appeared to pose question of contract interpretation); *Terre Haute Newspaper Guild Local No. 46 v. Thomson Newspapers, Inc.*, 68 F.Supp.2d 1028, 1034 (S.D.Ind. 1999)(interpretation of collective bargaining agreement required to determine whether workers at issue were covered). Accordingly, it must be said that Hanging has a "non-frivolous" argument that the resolution of its counterclaim will require interpretation of the parties' agreement. But that also means that Hanging's unjust enrichment claim is preempted, and suggests that it must resort to ERISA and/or the Taft-Hartley Act for relief, not state law as it has done.

This is a murky area of the law and, perhaps because of that, the parties have put it out of view. To the extent Hanging is seeking to recoup ERISA contributions mistakenly made – it is unspecific in its counterclaim – that statute does not really provide it with an avenue of relief; but it can seek restitution under *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America*, 998 F.2d 509, 512-513 (7th Cir. 1993):

> We believe that "recovery of contributions mistakenly made can be attempted under a [federal] common-law theory of restitution." ERISA *permits* plan trustees to return to employers payments made to a plan which are the result of a mistake of law or fact, 29 U.S.C. § 1103(c)(2)(A)(I) & (ii), but it does *513 not establish a cause of action by which employers may seek to *compel* such a refund. Absent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments. Employers are already penalized for failing to make required contributions. 29 U.S.C. § 1132(g)(2). If they are not permitted to seek recovery of mistaken contributions they may be less inclined to sponsor ERISA-qualified plans at all. This would undermine ERISA's goal of expanding pension and welfare benefit plan coverage.

*Id.* at 512-513. Success on such a claim is another matter because "recovery will not follow automatically upon a showing that [Hanging] contributed more than was required but only if 'the equities favor it.'" *Id.* at 513. *See also Construction Industry Retirement Fund of Rockford, Ill. v.*

*Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993)(foreclosing claim where contributions went to purchase health insurance); *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 651 (7th Cir. 2001)(collecting cases). But there is federal jurisdiction over such a claim. *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates, P.A.*, 53 F.3d 172, 175-76 (7th Cir. 1995).[2]

Insofar as Hanging is seeking restitution of overpayments under the Taft-Hartley Act, however, its claim must fail. I have found no case allowing such a claim, and the parties have not addressed the issue. In any event, the weight of authority is against allowing such a claim. *See Award Service, Inc. v. Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund*, 763 F.2d 1066, 1070-71 (9th Cir. 1985)(refusing to allow cause of action under LMRA for the return of pension contributions); *Rochetti v. American Federation of Musicians'*, 1987 WL 12767, *3 (N.D.Ill. Aug. 13, 1987); *Airco Indus. Gases v. Teamsters Health and Welfare Pension Fund of Philadelphia & Vicinity*, 618 F.Supp. 943, 946-47 (D.Del. 1985)(LMRA does not authorize an employer for restitution of mistaken payments). To the extent the dispute is over ERISA contributions, however, federal jurisdiction exists.

Finally, plaintiffs also argue that the Will County union is an indispensable party and, Hanging's claim must therefore be dismissed. But beyond the bald contention, plaintiffs fail to explain why the Will County union's participation is necessary. The Will County union has received its money from Hanging and have no claim to the disputed overpayment to the plaintiffs. The only

---

[2] In their reply brief, plaintiffs assert that if Hanging's claim is preempted, it must be dismissed, citing *National Metalcrafters, Div. Of Keystone Consol. Industries v. McNeil*, 784 F.2d 817 (7th Cir. 1986). (*Reply*, at 1). *McNeil* did not so hold. It involved a declaratory judgment that Illinois' Wage Payment Act was preempted by Section 301. Clearly, under *UIU Severance*, dismissal is not required.

7

question is whether Hanging overpaid the plaintiffs. Thus, complete relief can be granted between the existing parties without joining the Will County union. *Rubloff Excavation, LLC v. Central Laborers' Pension, Welfare and Annuity Fund*, 2002 WL 31757578, *2 (N.D.Ill. Dec. 6, 2002).

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion to dismiss the defendant's counterclaim [# 39] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 1/22/08